48 CCPA

**Application of Leopold S. ROMITO.**

**Patent Appeal No. 6680.**

United States Court of Customs and Patent Appeals.

May 5, 1961.

Albert J. Kramer, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, New York City, of counsel), for Commr. of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and WILLIAM H. KIRKPATRICK, Judge.*

RICH, Judge.

This appeal is from the refusal by the Patent Office of the one remaining claim, no claim having been allowed, of application Ser. No. 517,584, filed June 23, 1955, entitled "Lounge Chairs." Appellant is said to be the president of a corporation manufacturing beauty salon furniture and equipment and the chair sought to be patented is of the type for use therein having a foot rest which can be raised by the occupant of the chair, after sitting down in it, through a mechanical linkage actuated by a hand lever at one side of the chair. This type of chair is admittedly old and the improvement sought to be patented is said to reside in the foot-rest-actuating linkage.

The sole issue is patentability over the prior art. The invention is defined in the appealed claim, aptly described by appellant's attorney as a "picture claim," which reads as follows:

"7. A chair having a seat; walls, including a front wall, a rear wall and side walls, forming a hollow structure supporting said seat, a foot rest disposed in front of said seat, hinges connecting the foot rest to the said structure for movement of the foot rest between a substantially horizontal operative position and a substantially vertical inoperative position, a rocker shaft disposed within the hollow structure between the front and rear walls parallel to the foot rest, bearings carried by the side walls for rotatably supporting the ends of the shaft, a bracket carried by the front wall for supporting the center portion of the shaft, said shaft having an extension through a side wall of the hollow structure, said extension being bent to provide a handle for rotating the shaft, an arm having one end secured to the shaft and the other end projecting downwardly therefrom when the foot rest is in its inoperative position, a pitman between said foot rest and arm, said pitman being substantially horizontal when the foot rest is in its inoperative position and having an extended portion, and an abutment member carried by said arm for contacting said extended portion and arresting relative movement between the arm and pitman when the foot rest is in the operative position and the point of connection between said pitman and arm is displaced upwardly from a straight line passing through the shaft and pivot point of the pitman with the foot rest, said structure having an aperture through which the pitman is disposed."

Simplified, the latter part of the claim describes a two piece prop consisting of the arm and the "pitman," which is another arm, the two arms being pivoted together and constructed so that they have a kind of knee joint, giving stiffness when in alinement and breaking only when the joint moves downwardly. One end of this prop is pivotally attached to the back of the footrest and the other end is fixed to the shaft under the seat which is rotated by the hand lever. Thus the occupant of the chair, by pulling the lever, rotates the shaft, raises the pivot point between the arm and pitman (which is the front link of the prop) so that the prop assumes its rigid position and thus supports the footrest, which has been raised in the process.

Appellant makes a point of the fact that the pitman is always in a substantially horizontal position. When the footrest is lowered its connection therewith moves downwardly as does the forward end of the arm attached to the

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* *Judge O'CONNELL*, pursuant to provisions of Section 294(d), Title 28, United States Code.

shaft. In the down position the pitman and arm are disposed at a right angle to each other. In raising the footrest the forward end of the arm moves forward and upward in an arc and pushes the footrest up, acting through the pitman. When the arm and pitman are slightly over center and just beyond an alined position they lock and form a rigid prop for the footrest. Appellant points to the "great mechanical advantage" and easy operation of this linkage.

Though 10 references are of record the only prior art relied on by the time the case reached the board is:

| Berry | 1,262,006 | April 9, 1918 |
|---|---|---|
| Krikorian | 2,746,519 | May 22, 1956 filed Aug. 13, 1953 |
| Martin | 2,777,506 | Jan. 15, 1957 filed Feb. 6, 1952 |
| Fidel | 2,833,338 | May 6, 1958 filed Feb. 21, 1955 |

Appellant asserts that there is novelty in the invention defined in claim 7, which novelty resides in the linkage *per se*, and the Patent Office Solicitor admits this in saying that the statutory basis for the rejection is found in 35 U.S.C. § 103, not in section 102.

The reference principally relied on is Fidel, which was first cited in the examiner's Answer. It did not issue until after final rejection. At applicant's request, the board remanded the case for reconsideration by the examiner, claim 7 was amended, and thereafter rejected "as being unpatentable over Fidel." It was the examiner's view that if Fidel's linkage did not operate with sufficient smoothness and efficiency it would be obvious to a skilled mechanic, in view of knowledge possessed by "even the unskilled layman," how to alter Fidel's linkage to overcome its possible shortcomings.

While the board said that "the only serious question before us is whether claim 7 as amended is patentable over Fidel," it discussed the Berry and Krikorian patents and seems to have relied to some extent on the latter as an indication of what a person of ordinary skill in the art would know, as an "exemplification" of the common knowledge of the art.

Fidel discloses a chair very much like appellant's in that it has a boxed-in base, a hinged footrest, a rocker shaft in the base with an actuating lever on it, and a footrest-raising and supporting prop consisting of two pivoted arms which lock when in substantially alined position. The location of the rocker shaft is higher in appellant's structure than in Fidel and the proportioning of the links or arms is somewhat different. In consequence, Fidel's prop folds upwardly while appellant's folds downwardly and this is the significance of the claim limitation that the pitman is horizontal when the footrest is folded. Fidel's corresponding part is vertical. Fidel's rocker shaft being near the bottom of the base, his hand lever is about twice as long as appellant's, a factor to be taken into consideration in considering ease of operation.

The principal burden of appellant's argument is that his footrest operating mechanism is easier to operate than Fidel's. The same argument appears to have been made in the Patent Office. In petitioning the board for rehearing, the petition said:

"Appellant's invention has been on the market for some time and many chairs built in accordance therewith are in commercial use. They are

competitive with chairs constructed on the Fidel principle and are considerably easier to operate."

While there is no evidence in the record to support these bare assertions, similar argument seems to have led the board to make a statement, on which appellant leans heavily, as follows:

"Analyzing the structure of Fidel, we find that it would be difficult if not impossible *to start* moving the foot rest from the position of Figure 3 by operation of handle 25 only." [Emphasis ours.]

The position of Figure 3 is the folded position of the footrest in which the two arms of the prop are in their collapsed position, in which they make an acute angle with one another.

Analyzing Fidel's structure ourselves, we think such a factual conclusion as was reached by the board is not justified, in the absence of an actual demonstration, merely on the basis of patent drawings which are not required to be working drawings. Furthermore, even those drawings show that the Fidel footrest is hanging in a position in which the slightest force would cause it to swing like a pendulum on its hinges and even a short swing would so increase the angle between the folded arms of the linkage as to make *starting* the movement of the footrest easy, especially with the long hand lever provided. From that point on, as clearly taught by Fidel with constant reiteration, his assembly acts as a toggle in raising the footrest into its "operative" or raised position. Considering the downward movement of this toggle and the mechanical advantage a toggle pro-

vides,[1] its angle with respect to the footrest, and the length of the hand lever, it is by no means certain to us that Fidel does not have an advantage over appellant in ease of operation, at least in the final raising. On the basis of the record we deem it impossible to say whether Fidel's or appellant's footrest would be easier to operate. We are not impressed with the factually unsupported argument predicated on a contribution of increased ease of operation to this art.

In any case, both the examiner and the board held, notwithstanding acceptance, at least arguendo, of the ease of operation argument, that no more than ordinary mechanical skill would be required to make the slight changes in Fidel necessary to make it correspond to appellant's structure and that the improved results produced by the changes— if indeed there would be any—would be no more than the expected. We find no error in this conclusion.

While it may be true, as appellant argues, that there is no suggestion in Krikorian or in Fidel to replace any of the mechanism of one with parts taken from the other, Krikorian's disclosure of linkages in a rocking chair with a lever-operated footrest, and also Berry's footrest with a toggle and lever operator therefor, more than adequately support the board's view that there is nothing patentable in appellant's structure over Fidel because nothing is involved other than obvious mechanical variations well within the skill of the art.

The decision of the board is affirmed.

Affirmed.

---

1. Hawkins' Mechanical Dictionary (1909) thus defines "Toggle Joint":
"An elbow joint; a mechanism common in many forms of presses and in stone crushers; by its action it gives an enormous mechanical advantage. It consists of two rods or plates *hinged* together and employed to transmit a varying force by side pressure on the hinge, which is called the *knuckle* or knee from its resemblance to the knee of a man."