### In re Jeffrey B. GORMAN and Marilyn Katz.

#### No. 90–1362.

United States Court of Appeals, Federal Circuit.

May 13, 1991.

---

Thomas W. Tolpin, Highland Park, Ill., argued for appellant.

Teddy S. Gron, Associate Sol., Office of the Sol., Arlington, Va., argued for appellee. With him on the brief was Fred E. McKelvey, Sol.

Before RICH, NEWMAN, and RADER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Jeffrey B. Gorman and Marilyn Katz (hereinafter "Gorman") appeal the decision of the United States Patent and Trademark Office, Board of Patent Appeals and Interferences (the "Board") denying patentability to all the claims of Gorman's patent application Serial No. 06/882,480, entitled "Composite Food Product." We affirm.

## The Invention

The claimed invention is a composite candy sucker on a stick, molded in an elastomeric mold in the shape of a human thumb. During the manufacturing process liquid candy is poured into the mold, and an edible plug of bubble or chewing gum or chocolate or food-grade wax is poured into the mold after the candy has hardened, serving as a seal for the end portion of the candy. A paper or plastic disc abuts and covers the plug. The mold serves as a cover that can be removed from the candy by means of protruding flanges. The cover is described as a "toy and novelty item".

Figure 1 shows the invention in the form in which it is marketed. Figure 2 shows the cover partially removed to reveal the candy portion (12) and the chewable or edible plug (58):

The claims describe the product in detail, as is apparent from claim 16, the claim pressed by Gorman in this appeal:

16. A composite food product, comprising:

a candy core, said candy core being in a generally liquified form when formulated, heated, blended and poured into a mold and in a substantially thumb-shaped hardened form when cooled and removed from said mold;

said thumb-shaped hardened form comprising said candy core positioned along a vertical axis and comprising a rigid joint-shaped portion, a rigid upper portion extending upwardly from said rigid joint-shaped portion along said vertical axis, and a rigid lower portion extending downwardly from said rigid joint-shaped portion along said vertical axis, said upper portion having a rigid finger nail-shaped portion with an upper rigid tip providing a rigid top end of said thumb-shaped hardened form and a rigid convex back extending rearwardly and downwardly from said rigid tip, and said rigid lower portion having a rigid bottom end and defining a recessed opening comprising a handle-receiving socket about said vertical axis;

a removable resilient shell comprising a substantially thumb-shaped, elastomeric material selected from the group consisting of rubber and flexible plastic, said shell providing

a mold for receiving and molding said liquified candy form,

a removable outer protective cover positioned about and covering said hardened form comprising said candy core, and

a toy and novelty item for placement upon the thumb of the user when removed from said hardened form comprising said candy core;

said thumb-shaped elastomeric material comprising said removable resilient shell comprising a flexible joint-shaped portion, a flexible upper portion extending upwardly from said flexible joint-shaped portion along said vertical axis, and a flexible lower portion extending downwardly from said flexible joint-shaped portion along said vertical axis, said upper portion having a flexible finger nail-shaped portion with an upper flexible tip providing a flexible top end of said shell and a flexible convex back extending rearwardly and downwardly from said flexible tip, and said flexible lower portion having an enlarged open ended diverging base, said base having a larger circumference and transverse cross-sectional area than other portions of said shell and providing the bottom of said shell, said open ended based defining a plug-receiving chamber and an access opening for entrance of said liquified form and discharge of said hardened candy form, and a set of substantially symmetrical arcuate lobes extending radially outwardly from said base, said lobes being circumferentially spaced from each other and providing manually grippable flange portions to facilitate manual removal of said shell from said core;

a plug positioned in said plug-receiving chamber adjacent said bottom of said shell, said plug abutting against the bottom of said core and providing a cap for substantially plugging and sealing the open end of said mold and cover to help enclose said candy core, and said plug comprising a food grade material selected from the group consisting of bubble gum, chewing gum, chocolate, and food grade wax;

a handle having a connecting portion connected to said plug and said candy core and positioned in said plug-receiving opening and having a manually grippable handle portion extending downward from said connecting portion along said vertical axis; and

a substantially planar annular disk for abuttingly engaging and removably seating against said base and said lobes adjacent said plug, said disk defining a central axial hole for slidable receiving said handle portion and having an outer edge with a maximum span larger than said access opening but less than the maximum diameter of said symmetrical set of lobes to substantially minimize the interference with manually gripping of said manual grippable flange portions of said lobes, said disk being of a material selected from the group consisting of paper, paperboard, and plastic, and providing a removable closure member and seal for substantially closing said access opening and sealing said plug and said candy core within said shell.

The claims were rejected in view of thirteen references. The primary references, patents to Siciliano, Copeman, and Pooler, show ice cream or candy molded in a plastic, rubber or elastomeric mold. In Siciliano and Copeman the mold also serves as the product wrapper. In Siciliano the ice cream is poured into the mold, a stick is inserted, the ice cream is hardened, and a cardboard cover seals the area between the stick and the elastomeric wrapper. Copeman and Kuhlke show candy lollipops molded in elastomeric molds. Copeman states that the mold may take "varying shapes, such as in the form of fruit, or animals" and Kuhlke discusses the desirability of sealing candy from the outside air. In Siciliano, Copeman and Kuhlke, the mold is peeled from the confection prior to use.

The two Nolte patents teach that gripping flanges may be placed on an ice cream wrapper to facilitate removal. Ahern and Knaust each show a disc-shaped seal or cover for a frozen confection. Ahern shows the cover in conjunction with ice cream on a stick.

Harris shows a hollow thumb-shaped lollipop into which the thumb is inserted, and

Craddock shows a thumb-shaped confection supported on a disc-shaped handle; in both cases without the other elements shown by Gorman. Fulkerson shows a candy coating surrounding a block of ice cream, and a candy plug for retaining liquid syrup inside a cavity in the ice cream. Webster shows chewing gum entirely enclosing a liquid syrup product. Spiegel shows a chocolate layer having an alcohol diffusion barrier to plug the end of a plastic container of liqueur. Fulkerson, Webster and Spiegel all suggest the greater appeal to consumers of providing two different components in the same confection.

The Board found that all of the features of Gorman's product were known to the art, and that various combinations of these elements existed in known similar structures. The Board concluded that the applicant's claimed combination was suggested by and would have been obvious in light of the references.

### Discussion

#### A

■ Each element of the Gorman claims is in the prior art, separately or in sub-combination. Gorman argues that when it is necessary to combine the teachings of a large number of references in order to support a rejection for obviousness under 35 U.S.C. § 103, this of itself weighs against a holding of obviousness.

The criterion, however, is not the number of references, but what they would have meant to a person of ordinary skill in the field of the invention. In *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1383, 231 USPQ 81, 93 (Fed.Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987), the court held that a combination of about twenty references that "skirt[ed] all around" the claimed invention did not show obviousness. In other instances, on other facts, we have upheld reliance on a large number of references to show obviousness. Compare *In re Miller*, 159 F.2d 756, 758–59, 72 USPQ 512, 514–15 (CCPA 1947) (rejecting argument that the need for eight references for rejection supported patentability) with *Kansas Jack*,

*Inc. v. Kuhn*, 719 F.2d 1144, 1149, 219 USPQ 857, 860 (Fed.Cir.1983) (where teachings relied upon to show obviousness were repeated in a number of references, the conclusion of obviousness was strengthened). *See also, e.g., In re Troiel*, 274 F.2d 944, 947, 124 USPQ 502, 504 (CCPA 1960) (rejecting appellant's argument that combining a large number of references to show obviousness was "farfetched and illogical").

■ Determination of whether a new combination of known elements would have been obvious to one of ordinary skill depends on various factors, including whether the elements exist in "analogous art", that is, art that is reasonably pertinent to the problem with which the inventor is concerned. *In re Deminski*, 796 F.2d 436, 442, 230 USPQ 313, 315 (Fed.Cir.1986). When the references are all in the same or analogous fields, knowledge thereof by the hypothetical person of ordinary skill is presumed, *In re Sernaker*, 702 F.2d 989, 994, 217 USPQ 1, 5 (Fed.Cir.1983), and the test is whether the teachings of the prior art, taken as a whole, would have made obvious the claimed invention. *See In re Young*, 927 F.2d 588, 591, 18 USPQ2d 1089, 1091 (Fed.Cir.1991).

When it is necessary to select elements of various teachings in order to form the claimed invention, we ascertain whether there is any suggestion or motivation in the prior art to make the selection made by the applicant. *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1143, 227 USPQ 543, 551 (Fed.Cir.1985). " 'Obviousness can not be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching, suggestion or incentive supporting the combination.' " *In re Bond*, 910 F.2d 831, 834, 15 USPQ2d 1566, 1568 (Fed.Cir.1990) (quoting *Carella v. Starlight Archery and Pro Line Co.*, 804 F.2d 135, 140, 231 USPQ 644, 647 (Fed.Cir.1986)).

■ The extent to which such suggestion must be explicit in, or may be fairly inferred from, the references, is decided on the facts of each case, in light of the prior

art and its relationship to the applicant's invention. As in all determinations under 35 U.S.C. § 103, the decisionmaker must bring judgment to bear. It is impermissible, however, simply to engage in a hindsight reconstruction of the claimed invention, using the applicant's structure as a template and selecting elements from references to fill the gaps. *Interconnect Planning*, 774 F.2d at 1143, 227 USPQ at 551. The references themselves must provide some teaching whereby the applicant's combination would have been obvious.

## B

Gorman argues that the references showing ice cream in a mold or wrapper on a stick and the references showing candy in a mold or wrapper on a stick are not analogous, for they require different conditions of production. However, the Copeman reference shows the close relationship of these arts, stating that his elastomeric mold may be used for "frozen confections and other solid confections". We conclude that the ice cream on a stick and candy on a stick arts are analogous, and that the Siciliano, Copeman, Pooler, and Kuhlke references show or suggest Gorman's candy on a stick and covered with an elastomeric mold, for which the thumb-shape is shown by Harris or Craddock.

The suggestion of providing a layer of chewing gum, chocolate or the like, surrounding the candy core in the area not covered by the mold, to seal the candy and provide a second food product, is provided by Fulkerson, Webster, or Spiegel. The paper disc adjacent the base of the candy structure is shown in Ahern and Knaust. Harris and Craddock both show thumb-shaped candy. Gorman argues that the prior art does not suggest using the thumb-shaped cover as a toy after the candy is removed. However, Copeman states that his rubber mold may be used as a "toy balloon" after the candy is removed. Gorman argues that Craddock teaches away from the claimed invention because of Craddock's admonition that lollipops on sticks are dangerous to children. However, candy on a stick is too well known for this caution to contribute to unobviousness.

Claim 16 recites details such as a "joint-shaped portion", a "finger nail portion", an "upper portion", a "lower portion" and a "convex back", as descriptive of the thumb shape. Such details are shown in the references and do not contribute to unobviousness. A claim that is narrowly and specifically drawn must nevertheless meet the requirements of § 103:

> The mere fact that a claim recites in detail all of the features of an invention (i.e., is a "picture claim") is never, in itself, justification for the allowance of such a claim.

Manual of Patent Examining Procedure, § 706 (Rev. 6, Oct. 1987) at pp. 700–6; *In re Romito*, 289 F.2d 518, 129 USPQ 359 (CCPA 1961) (rejecting a "picture claim").

■ Applying the principles of *Graham v. John Deere & Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966), we discern all of the elements of claim 16, used in substantially the same manner, in devices in the same field of endeavor. The various elements Gorman combined: the molded lollipop with a chewing gum plug, with the mold serving as the product wrapper; and candy in the shape of a thumb; are all shown in the cited references in various subcombinations, used in the same way, for the same purpose as in the claimed invention. The Board did not, as Gorman argues, pick and choose among isolated and inapplicable disclosures in the prior art. Rather, the claim elements appear in the prior art in the same configurations, serving the same functions, to achieve the results suggested in prior art. *In re Sernaker*, 702 F.2d at 994, 217 USPQ at 5. The large number of cited references does not negate the obviousness of the combination, for the prior art uses the various elements for the same purposes as they are used by appellants, making the claimed invention as a whole obvious in terms of 35 U.S.C. § 103.

The Board's decision is

AFFIRMED.