NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SONOS, INC.,**
*Appellant*

**v.**

**GOOGLE LLC,**
*Appellee*

---

2023-2040

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-01563.

---

Decided:  June 18, 2025

---

ERIC SHUMSKY, Orrick, Herrington & Sutcliffe LLP, Washington, DC, argued for appellant.  Also represented by JONAS WANG; EDMUND HIRSCHFELD, EMILY VILLANO, New York, NY; ELIZABETH MOULTON, San Francisco, CA; GEORGE I. LEE, COLE BRADLEY RICHTER, MATTHEW SAMPSON, I, RORY PATRICK SHEA, JOHN DAN SMITH, III, SEAN MICHAEL SULLIVAN, Lee Sullivan Shea & Smith LLP, Chicago, IL.

ERIKA ARNER, Finnegan, Henderson, Farabow, Garrett

& Dunner, LLP, Washington, DC, argued for appellee. Also represented by UMBER AGGARWAL, DANIEL C. TUCKER, Reston, VA; CORY C. BELL, Boston, MA; KARA ALLYSE SPECHT, Atlanta, GA.

_____

Before PROST, LINN, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

Google LLC successfully petitioned for inter partes review of claims 1–2, 6–14, 18–25, and 27–29 of U.S. Patent No. 9,967,615 owned by Sonos, Inc. The Patent Trial and Appeal Board held that Google had demonstrated by preponderant evidence that all challenged claims are unpatentable as obvious. On appeal, Sonos argues that certain findings by the Board lack substantial evidence support. For the reasons that follow, we disagree and affirm the Board's decision.

BACKGROUND

As the parties are familiar with the facts of this case, we recite here only those facts necessary to frame and decide the issues presented on appeal.

The '615 patent is titled "Networked Music Playback" and discloses "[s]ystems, methods, apparatus, and articles of manufacture to facilitate connection to a multimedia playback network." U.S. Patent No. 9,967,615 Title, Abstract (capitalization normalized). The patent "is related to consumer electronics and, more particularly, to providing music for playback via one or more devices on a playback data network." '615 patent col. 1 ll. 13–15. Claims 1 and 9 are representative and provided below with the disputed limitations emphasized.

1. A method comprising:

. . . detecting, via the control device, a set of inputs to transfer playback from the control device to a particular playback device . . .

. . . causing playback to be transferred from the control device to the particular playback device, wherein transferring playback from the control device to the particular playback device comprises:

(a) causing *one or more first cloud servers* to add multimedia content to a local playback queue on the particular playback device, wherein adding the multimedia content to the local playback queue comprises the *one or more first cloud servers* adding, to the local playback queue, one or more resource locators corresponding to respective locations of the multimedia content at one or more second cloud servers of a streaming content service;

(b) *causing playback at the control device to be stopped*; and

. . . causing the particular playback device to play back the multimedia content, wherein the particular playback device playing back the multimedia content comprises the particular playback device retrieving the multimedia content from one or more second cloud servers of a streaming content service and playing back the retrieved multimedia content.

9. The method of claim 1, wherein causing one or more first cloud servers to add the multimedia content to the local playback queue on the particular playback device comprises *sending a message to the streaming content service* that causes the one or more first cloud servers to add the multimedia content to the local playback queue on the particular playback device.

'615 patent cols. 17–19 (emphases added to distinguish claim limitations in dispute).

Three prior art references are pertinent on appeal: Al-Shaykh,[1] Qureshey,[2] and Phillips.[3] Relevant here, the Board concluded that Google had demonstrated that claims 1, 6–13, 18–25, and 27–29 of the '615 patent are unpatentable under 35 U.S.C. § 103 based on a combination of some or all of these three prior art references. Sonos appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Our court reviews "the Board's obviousness determination *de novo*, but its factual findings for substantial evidence." *Volvo Penta of the Ams., LLC v. Brunswick Corp.*, 81 F.4th 1202, 1208 (Fed. Cir. 2023). What a reference teaches is a question of fact. *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1341 (Fed. Cir. 2010). "Whether a skilled artisan would have been motivated to combine references" is also a question of fact that we review for substantial evidence. *Elekta Ltd. v. ZAP Surgical Sys., Inc.*, 81 F.4th 1368, 1374 (Fed. Cir. 2023). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1373 (quoting *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000)).

On appeal, Sonos challenges various findings by the Board involving the three aforementioned prior art references: (1) that a person of ordinary skill in the art would have been motivated to combine the relevant teachings of Al-Shaykh and Qureshey to meet the "one or more first cloud servers" limitation of claim 1; (2) that a person of

---

[1] U.S. Patent Application Publication No. 2011/0131520.

[2] U.S. Patent No. 8,050,652.

[3] U.S. Patent No. 8,799,496.

ordinary skill in the art would have been motivated to combine the relevant teachings of Al-Shaykh and Qureshey to meet the "sending a message to the streaming content service" limitation of claim 9; and (3) that Al-Shaykh teaches "causing playback at the control device to be stopped" as recited in claim 1, or, in the alternative, that a person of ordinary skill in the art would have been motivated to combine the relevant teachings of Al-Shaykh and Phillips to meet this limitation. We address each challenge in turn.

I

We first address Sonos's contention that substantial evidence does not support the Board's finding that a person of ordinary skill in the art would have been motivated to modify Al-Shaykh in view of Qureshey to meet claim 1's "one or more first cloud servers" limitation. For the following reasons, we uphold the Board's finding.

Al-Shaykh is titled "System and Method for Transferring Media Content From a Mobile Device to a Home Network," J.A. 3273 (capitalization normalized), and "relates to a system and a method which enable a media application on the mobile device to share media content with rendering devices [i.e., playback devices, e.g., a television, stereo, or personal computer (PC)] in the home network." J.A. 3284 ¶¶ 77, 81. Qureshey is titled "Method and Device for an Internet Radio Capable of Obtaining Playlist Content from a Content Server" and discloses a "network-enabled audio device that provides a display device that allows the user to select playlists of music much like a jukebox." J.A 3298 (capitalization normalized). Qureshey's disclosure "relates to the field of audio file transfers and, more particularly, relates to the field of management and distribution of audio files over a computer network such as the Internet." J.A. 3350 at 1:21–24. As the Board recognized:

> [I]n the combined Al-Shaykh-Qureshey system, when a set of inputs to transfer playback from the mobile device to the particular rendering device is

> detected, as disclosed in Al-Shaykh, then the system would cause a first cloud server (i.e., Qureshey's [Internet Personal Audio Network (IPAN)] server) to add [Uniform Resource Locators (URLs)] associated with the locations of the audio files to the storage space [] (as disclosed in Qureshey) in Al-Shaykh's rendering devices.

J.A. 37 (first alteration in original) (citation omitted).

Sonos begins its argument by asserting that "[t]he Board failed to cite substantial evidence that a skilled artisan looking to improve Al-Shaykh would have considered Qureshey at all." Appellant's Br. 44. We reject this contention.

It is undisputed that Al-Shaykh and Qureshey are analogous art to the '615 patent. *See* J.A. 122–34, 443, 3129 ¶ 78 (Google and its expert explaining that Al-Shaykh and Qureshey are analogous art to the '615 patent); J.A. 296 (Board explaining in its decision to institute that Google's showing, including on analogous art, was "unopposed"); J.A. 353–420, 463–89 (Sonos raising no dispute related to analogous art in its Patent Owner Response and Sur-Reply). And "[w]hen the references are all in the same or analogous fields, knowledge thereof by the hypothetical person of ordinary skill is presumed." *In re Gorman*, 933 F.2d 982, 986 (Fed. Cir. 1991).

Based on the disclosures of Al-Shaykh and Qureshey and the Declaration of Google's expert Dr. Harry Bims, the Board found that Al-Shaykh and Qureshey "are in the same field of endeavor, deal with similar devices, and are directed to . . . solving the same or similar problems." J.A. 42–43. Contrary to Sonos's contentions on appeal— and to the extent that Sonos has not forfeited them—substantial evidence supports this finding. For example, Dr. Bims provided detailed testimony that a person of ordinary skill in the art would have understood that Al-Shaykh and Qureshey "enable users to transfer playback

to various devices and playback content on those devices from the Internet, which, a [skilled artisan] would understand to provide much greater accessibility to content than traditional systems that were limited to playback of content locally stored on the network." J.A. 3125–26 ¶ 72. He further testified that a person of ordinary skill in the art "would understand that both references describe networked media playback systems that include a control device (such as a PC or mobile device) and one or more rendering devices." J.A. 3126 ¶ 73. Moreover, Sonos conceded that Qureshey's system and approach were "'well-known' by Al-Shaykh's era." Appellant's Reply 15; J.A. 43, 384–86. And, as the Board noted, we have held that "[t]here is a motivation to combine when a known technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the prior art elements according to their established functions." *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1380–81 (Fed. Cir. 2023) (citations omitted) (internal quotation marks omitted); *see also In re Inland Steel Co.*, 265 F.3d 1354, 1362 (Fed. Cir. 2001) ("The motivation to combine particular references may come from the nature of the problem to be solved, leading inventors to look to the references relating to possible solutions to that problem." (internal quotation marks and citation omitted)).

Sonos next asserts that the Board "erroneously found that a skilled artisan looking to improve Al-Shaykh would have incorporated Qureshey's IPAN server in particular." Appellant's Br. 58. Again, we disagree.

Al-Shaykh discloses: (1) that the mobile device may instruct the target rendering device (e.g., a PC) to obtain the media content directly from the media server in the home network, J.A. 3286 ¶ 96; (2) that the home network may provide a connection to the Internet, J.A. 3284 ¶ 80; and (3) that metadata associated with audio media content may be provided, J.A. 3285 ¶ 87. But Al-Shaykh does not

disclose further detail on this functionality. Qureshey, on the other hand, discloses this functionality and provides further detail not included in Al-Shaykh. For example, Qureshey discloses:

> The user accesses the server site via a PC and the Internet. From the server site, the user obtains a list of the devices in his or her Internet Personal Audio Network (IPAN) and what songs are on those devices. The IPAN includes an IPAN server, an IPAN client, and IPAN software stored on the network-enabled audio device. . . . The IPAN client and the IPAN server store the name of the song and the associated Uniform Resource Locator (URL).

J.A. 3351 at 3:34–48; *see also, e.g.*, J.A. 3314, 3352, 3357–58 at 16:56–17:31 (describing a computing environment of a network-enabled audio device configuration). Qureshey further provides that each network-enabled audio device can store a playlist, associated URLs, and songs within the playlist. J.A. 3360 at 21:43–50.

Dr. Bims explained that a skilled artisan "would have modified Al-Shaykh's system to include features from Qureshey's system. Specifically, . . . Al-Shaykh's system would incorporate Qureshey's first cloud server (i.e., the IPAN server)." J.A. 3145 ¶ 101. He continued:

> [A skilled artisan] would have been motivated to incorporate the back-end server functionality that enables a rendering device to directly retrieve content from the Internet to play back, as taught by Qureshey, into Al-Shaykh's system . . . . Al-Shaykh's rendering devices can directly retrieve media content from a remote server for playback but Al-Shaykh does not explain the details on the back-end functionality that facilitates this transaction. Thus, it is my opinion that a [skilled artisan] would have looked to similar references in the art for further disclosures of networked playback

systems to determine how playback devices within the systems are able to directly retrieve content from remote sources, and, thus, a [skilled artisan] would have found it obvious to combine Al-Shaykh and Qureshey in this way.

. . . [A skilled artisan] would have been motiv[at]ed to implement Qureshey's back-end server functionality to improve the system by preventing any disconnection or failure of a mobile control device to impact ongoing playback on the rendering device. That is, a [skilled artisan] would understand that the added functionality enables storage of URLs on the rendering device such that the rendering device can retrieve the content to be played back without assistance from the mobile control device. It is my opinion that a [skilled artisan] would recognize that such a combination would vastly improve the user experience by minimizing playback stoppages at the rendering device.

J.A. 3146–47 ¶¶ 102–03 (citations omitted).

This expert testimony is not conclusory or otherwise defective, is supported by disclosures in Al-Shaykh and Qureshey themselves, and the Board was within its discretion to give the expert testimony considerable weight. *Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1376 (Fed. Cir. 2020) (determining that expert testimony constituted substantial evidence of a motivation to combine prior art references). Accordingly, we hold that substantial evidence supports the Board's finding that a skilled artisan would have been motivated to combine the relevant teachings of Al-Shaykh and Qureshey, including Qureshey's IPAN server, to meet claim 1's "one or more first cloud servers" limitation.

II

Next, we next address Sonos's contention that substantial evidence does not support the Board's finding that a person of ordinary skill in the art would have been motivated to combine the relevant teachings of Al-Shaykh and Qureshey to meet claim 9's "sending a message to the streaming content service" limitation.

Sonos argues that "[t]he Board's motivation-to-combine analysis was insufficient twice over," Appellant's Br. 69, but Sonos never raised an argument to the Board related to motivation-to-combine for claim 9. In its Patent Owner Response, Sonos argued only that Al-Shaykh's disclosure "simply does not amount to the specific functionality required by claim 9." J.A. 419–20. In its Sur-Reply, Sonos argued only that "Al-Shaykh combined with Qureshey does not satisfy claim 9." J.A. 489. Accordingly, we agree with Google that Sonos forfeited the motivation-to-combine argument it now raises on appeal. "A party forfeits an argument that it failed to present to the Board because it deprives the court of the benefit of the Board's informed judgment." *Schwendimann v. Neenah, Inc.*, 82 F.4th 1371, 1380 (Fed. Cir. 2023) (quoting *In re NuVasive, Inc.*, 842 F.3d 1376, 1380 (Fed. Cir. 2016)) (internal quotation marks omitted). We thus decline to consider this argument for the first time on appeal. *See Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1378 (Fed. Cir. 2023).

III

Finally, we turn to Sonos's argument that substantial evidence does not support (1) the Board's finding that Al-Shaykh teaches "causing playback at the control device to be stopped" as recited in claim 1, or (2) its alternative finding that a person of ordinary skill in the art would have been motivated to combine the relevant teachings of Al-Shaykh and Phillips to meet this limitation. For the reasons that follow, we uphold the first finding by the Board and, thus, we need not reach the second.

The Board credited the testimony of Dr. Bims and found that, "[a]s disclosed in the paragraphs of Al-Shaykh . . . , Al-Shaykh stops rendering of the media content on the device currently rendering the media content when the media content is transferred to a new rendering device." J.A. 48–49. Al-Shaykh discloses:

> [A]n advantage of the present invention is to provide a system and a method for transferring media content from a mobile device to a home network which enable a user to use the mobile device to start and stop external rendering of the media content currently selected in a media application executed by the mobile device.

J.A. 3283 ¶ 53. Among other things, Al-Shaykh further provides:

> If the transfer of the media content [] is enabled, the user [] may . . . select a new target rendering device. As a result, the transfer to and/or the rendering of the media content [] on the initial target rendering device may be stopped, and/or the transfer to and/or the rendering of the media content [] on the new target rendering device may begin.

J.A. 3293 ¶ 156. Based on these disclosures in Al-Shaykh, Dr. Bims provided detailed testimony that "Al-Shaykh discloses transferring playback from the control device to the particular playback device further comprising causing playback at the control device to be stopped (e.g., enabling transfer of media content to rendering device stops playback at the mobile device)." J.A. 3147–48 ¶¶ 104–06.

Based on the above quoted language in Al-Shaykh and Dr. Bims' testimony, we hold that substantial evidence supports the Board's finding that Al-Shaykh teaches "causing playback at the control device to be stopped" as recited in claim 1. As such, we need not reach the Board's alternative finding.

12                                          SONOS, INC. v. GOOGLE LLC

CONCLUSION

We have considered Sonos's remaining arguments and are unpersuaded.  For the foregoing reasons, we affirm the decision of the Board.

**AFFIRMED**