51 CCPA
**Application of James Donald WALKER**
(two cases).
**Patent Appeals Nos. 6772, 7058.**

United States Court of Customs and Patent Appeals.

Dec. 12, 1963.

---

Howard H. Darbo, Darbo, Robertson & Vandenburgh, Louis Robertson, Arlington Heights, Ill., for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

This case involves two consolidated appeals from the Board of Appeals. Patent Appeal No. 6772 is from the board's affirmance of the examiner's rejection of claims 24 through 34 and 36 through 39, the only remaining claims in appellant's application Serial No. 717,681. Patent Appeal No. 7058 is from that part of the board's decision refusing claims 9 to 12, 23, 24, and 27 through 29 of application Serial No. 511,453, the board having reversed the examiner's rejection of claims 18, 22, 25, 26 and 32, the remaining claims in that application. Application Serial No. 717,681 is designated by appellant as a "straight continuation" of Serial No. 511,453.[1]

*1.* Although Serial No. 511,453 was filed on May 27, 1955, and Serial No. 717,681 on February 26, 1958, the cases originally came up for hearing before the Board of Appeals together and decisions were rendered in both on July 28, 1960. After

The two applications disclose the same subject matter, the aeration of liquids such as sewage by liberating air from spaced clusters of orifices near the bottom of a tank to produce a circulating roll of the contents of the tank. The applications state:

"According to the present invention, efficient aeration is accomplished solely by the supply of air through air orifices large enough not to clog but especially arranged to produce a functioning not previously anticipated. The orifices are provided in clusters well separated from other clusters and near the wall or boundary of the circulating roll desired. A sufficient quantity of air is liberated through them to develop the required circulating roll. As this circulation develops, a stable condition is reached, at which unexpected factors produce efficient aeration. As the air leaves the cluster of orifices, it passes upwardly for a foot or two in a rather compact stream of air bubbles which seem to have a smooth flow action which would make them quite inadequate for aeration. As they rise, however, they encounter critical conditions which rather suddenly convert the smooth-flowing stream to a different condition. Here a turbulence develops which keeps breaking up the bubbles or re-forming them and spreading them apart into a much wider column."

The nozzle construction and the dimensional characteristics of the installation are described as important features of the invention. A view of the nozzle assembled on a distribution pipe is shown in Fig. 3 of the application reproduced below:

The essence of the application disclosure of the operating characteristics, including dimensions, is as follows:

" * * * The orifices are of short tubular type, so that they create enough back pressure to help maintain uniformity of flow through the orifices. Four orifices are preferred, partly for ease of drilling the orifices, but even more for certainty of desirable functioning. Four orifices provide fairly good distribution of air through a column of water to provide some air-lift action initially and good air-lift action after the break-up starts. The preferred diameter of the four orifice nozzles is approximately 3", that having been found to be eminently satisfactory. From 1" to 6" is believed to be acceptable, but this should not be taken as implying equal efficiency. The typical orifice diameter found excellent is $\frac{5}{16}$ inch, but from $\frac{1}{8}$ inch to $\frac{3}{8}$ inch is believed to be satisfactory. The diameter should be large enough so that there will virtually never be clogging and should be small enough so that the air

the board adhered to its decision in Serial No. 717,681 on reconsideration, that application was brought before this court as P.A. 6772.

The original board decision in Serial No. 511,453 incorporated the decision in the continuation application, with the observation that there concededly was no patentable distinction between the two applications. The board on reconsideration suspended proceedings in Serial No. 511,453. However, prosecution was later reopened in that application on order of the Commissioner of Patents with a view toward substituting it for the continuation application which was before the court. The earlier decisions in Serial No. 511,453 were vacated and the board rendered a new decision, allowing five claims, including claim 32 which is identical with claim 37 in Serial No. 717,681. That last decision is the basis of P.A. 7058.

stream will be small and sufficiently confined, so that water will have no chance of entering an orifice while the air is flowing.

"In a typical, satisfactory operation, sixteen cubic feet of air per minute is liberated through one nozzle (four orifices) with an orifice velocity of 126 ft. per second and with a 7" water column head loss. It is desirable not to let the velocity fall below 70 ft. per second. It then becomes harder to keep the flow balanced through the different nozzles.

"With the usual requirements as to total quantity of air, four orifices of about 5/16 inch diameter in each nozzle with the nozzles spaced from 15 inches to 24 inches along the header (or, at the outside 12 inches to 30 inches) has been found to work very satisfactorily.

\*   \*   \*   \*   \*

"The nozzles should be located at a sufficient depth below the liquid level to make sufficient use of the air-lift effect in producing a circulating roll. A submerged depth of about 8 ft. is believed to be about the minimum for efficiency, and 10 ft. or 12 ft. is preferred. The nozzles should be deep enough to cause the circulating roll to move along the bottom of the tank. As with any other type of air liberator for this purpose, excessive depths would require excessive air pressure and pumping costs. For economy, the tank may most efficiently be as wide as can be reliably caused to produce a circulating roll without excessive short-circuiting. \*   \*   \* "

Claims 24 and 37 are representative of the appealed claims in P.A. 6772 and read:

"24. A nozzle for introducing gas into a body of liquid comprising a nozzle body having an internal space adapted to be connected to a source of gas under pressure, and a plurality of gas-discharge conduits extend-ing from said internal space, the outlets of said gas-discharging conduits being spaced about a central area of about three inches in diameter, the outlets of said conduits having a transverse dimension of from about one-eighth inch to about three-eights inch and being arranged about said central area at a plurality of points of less than about 180° apart, the outlet ends of said gas-discharge conduits being free of closely-surrounding structure, so that when said nozzle is positioned in a body of liquid and gas discharged from it, the gas will be introduced directly into the liquid and will rise unimpeded in the form of a gas-lift column.

"37. Apparatus for treating a liquid with a gas comprising at least one gas header, nozzles spaced along said gas header, the distance between said nozzles being in excess of about twelve inches, said nozzles having an internal space communicating with said gas header, and gas-discharge conduits extending from said internal space and having outlets spaced about a central area of about three inches in diameter, the outlets of said gas-discharge conduits having a transverse dimension of from about one-eighth inch to about three-eighths inch and being spaced about said central area at points of less than about 180° apart, the outlet ends of said gas-discharge conduits being free of closely-surrounding structure so that when said nozzles are positioned in a body of liquid and gas discharged from them, the gas will be introduced directly into the liquid and will rise unimpeded in the form of a gas-lift column."

Representative claims on appeal in P.A. 7058 are 9, 23 and 27 which read:

"9. An aeration unit having a fitting at its bottom for communicating with a header, extending up from and communicating with the fitting, having orifice-forming means

adjacent the top of the unit, providing for the liberation of air in a stream not over three eighths of an inch thick at at least four positions located in one plane uniformly around a circle of approximately three-to six inch diameter; said unit having an orifice capacity capable of discharging 16 cubic feet per minute of gas with a pressure loss through the unit of approximately the head of a 7 inch column of water.

"23. The method of treating waste liquid which comprises flowing it through an open retention tank, liberating bubbles in the liquid in the tank, by liberating air through a plurality of spaced orifices of one eighth to three eighths inch diameter grouped in clusters of at least four orifices, with the clusters spaced apart at least several times the spacing of the orifices within a cluster, with the orifices all at substantially the same level at least eight feet below the surface of the liquid and along one side of a zone free from air liberation extending from the clusters at least six feet toward a side wall, and allowing the bubbles as initially liberated to rise under the influence of their buoyancy with their condition and path altered only by the effects of bubbles similarly liberated, and thereby setting up a circulating roll of the liquid through said zone, the liberation of said air being at a velocity of at least 70 feet per second and in sufficient quantity to produce concentrated forceful air lift action above each cluster to provide more than half way down to the cluster from the surface an area of violent local turbulence which causes the bubbles to be broken up and spread around, as they rise.

"27. Aeration apparatus for treating waste including an open tank at least seven feet in width for the passage therethrough and suitable retention therein of the waste liquid to be aerated therein, and means for introducing bubbles into said tank, breaking up said bubbles into very fine bubbles and producing a roll of the contents of the tank, said means consisting solely of air introducing means, said air introducing means including orifice means providing a series of separate clusters of separate orifices arranged at least eight feet below the level to which liquid is retained in the tank and all bordering but outside a zone extending at least six feet from the orifice means toward one wall, and means for supplying air through the orifices into the liquid to produce a circulating roll extending through said zone; said orifices having a diameter from $\frac{1}{8}$ to $\frac{3}{8}$ inch, the orifices of each cluster being located at the same level, adjacent the top of the orifice-forming structure and positioned near a three-inch circle at approximately 90° intervals thereon, and said supply means supplying enough air therethrough to provide a velocity of air through the orifices of at least seventy feet per second and to produce by air lift effect in the liquid upwardly of the cluster an area of violent turbulence in which the bubbles, after rising relatively smoothly initially, are broken up and spread laterally through a much wider area."

The references relied on below are:

| Zistel | 1,214,637 | February | 6, 1917. |
| Greenawalt | 1,598,858 | September | 7, 1926. |
| Powers | 2,479,403 | August | 16, 1949. |
| Walker | 2,616,676 | November | 4, 1952. |

E. B. Mallory, "The Combined Complete Treatment of Medium and High Concentration Washes," Water Works and Sewerage, Vol. 89, No. 4, November 1952, Page 146.

The Zistel patent relates to an arrangement for aerating railroad tank cars for carrying live fish. A series of pipes at the bottom of the tank are provided on their upper sides with nozzles in the form of a closed end nipple having twelve side ports through which air is expelled.

Disclosed in the Greenawalt patent is aerator structure for such purposes as flotation treatment of ores and pneumatic agitation of liquids and ore pulps. That patent refers to application of air or gas to the liquid through porous materials as unsatisfactory because of clogging of the pores, and discloses injecting air mixed with liquid through an arrangement where air jets are surrounded with collars or sleeves through which liquid is drawn and ejected by the air jet.

The Powers patent relates to treating sewage by injecting air through a water-jet injector below the surface. The injector includes four air nozzles radiating at right angles from a vertical feed pipe with water nozzles surrounding the air nozzles at each injection point. It shows that the injectors may be submerged 10 or 13 feet and that the total air flow for 8 jets may be 90 cubic feet per minute. Powers sets out a table purporting to compare the oxidizing effect of his water-jet injection with the effects provided by a porous plate arrangement and compressed air jet operation.

Appellant's earlier patent, the Walker reference, discloses a water-air jet for sewage aeration.

The Mallory Report discloses the construction of an air diffuser and describes the use of a system of such diffusers in aerating waste liquid. A drawing of that diffuser follows:

The Wolterink affidavit, one of a number submitted by appellant, was considered in connection with the Mallory Report. Accompanying that affidavit is a print corresponding to a 1941 installation of Mallory air diffusers at the bottom of a milk waste treating tank in two rows adjacent a side wall. An inner row of diffusers designated B is shown about 15 inches from the tank wall near the bottom of a 13 foot deep tank. Another print accompanying the affidavit shows the individual diffusers B as including aligned opposite air tubes, as contrasted to the offset tubes of the Mallory drawing, which aligned tubes are of $\frac{1}{8}$ inch inside diameter and $2\frac{3}{16}$ inch length mounted on opposite sides of a 1 inch pipe at $1\frac{7}{32}$ inch intervals. A third print illustrates a 1947 installation wherein the air tubes were 3 inches long with an inside diameter of either $\frac{1}{4}$ inch or $1\frac{3}{32}$ inch.

The board's decision in P.A. 7058, rendered more than one and one-half years

after that in P.A. 6772 and representing the board's later view of the involved subject matter, will be considered first.

In that appeal, the board acknowledged that the affidavits submitted by appellant show commercial success of his process and a lack of success of the Mallory process and allowed method and apparatus claims in view of such showing. However, it found that process claims 23 and 24 fail to recite the dimensional relationship of the spacing of the orifices in the clusters, which it considered, along with the spacing between the clusters, as "essential to the attainment of appellant's argued results and commercial success." It sustained the rejection of those claims as unpatentable over Mallory considered with appellant's affidavit of Wolterink. It also sustained the rejection of apparatus claims 27, 28 and 29 on the same art, pointing out that those claims contain no recitation of the dimensional spacing of the clusters.

Claims 9 to 12, defining a single nozzle unit, were held by the board to be unpatentable over Mallory. In so ruling, the board indicated that nothing patentable was seen in supplying air upwardly into the nozzle rather than downwardly as in Mallory, pointing out that Greenawalt showed a structure wherein the air supply pipe communicated with the nozzle from the bottom as well as one where such communication was with the top. It further pointed out that each four of Mallory's orifices, as disclosed in the prints filed with the Wolterink affidavit, considering two on one side of the header and the two opposite thereto on the other side, fell within a small rectangle of a size less than 2 inches by less than 6 inches. It regarded the size limitations of claims 9 to 12 as merely obvious variations over the reference structure.

Appellant emphasizes that claims 23 and 24 specify that the spacing between the clusters of orifices is "at least several times the spacing of the orifices within a cluster" and urges that, unless the spacing of the orifices therein were less than six feet, a distance which the board considered possible within the claim language, there would not be any clusters as required by the claims. He also relies on the recitation in those claims that the air is liberated at a velocity of at least 70 feet per second.

Although appellant recognizes that claims 27, 28 and 29 do not require any particular spacing between the clusters, he urges that "the even spacing of the orifices as in Mallory is not a spacing with orifices arranged in *separate clusters*." He states further that Mallory's structure must be regarded as employing a cluster 4 feet long and fails to meet recitations, such as those in claims 27 and 29, of the orifices of each cluster being located "near a three inch circle."

It is appellant's position that "it is difficult to read claims 9 to 12 except with the understanding that its orifices all lie uniformly around a circle of approximately three inch diameter (or in claims 9 and 10, three to six inches diameter)" and that the claims distinguish from Mallory in that respect.

■ We find no error in the board's view, expressed in P.A. 7058, that both the dimensional relationship of the spacing of the orifices in the clusters and the disclosed spacing between the clusters are essential to the improved results and commercial success argued by appellant. Since claims 23 and 24 lack a dimensional limitation on the spacing of the orifices, we find no basis for holding them unobvious over the Mallory publication considered with the Wolterink affidavit. Merely providing orifices of Mallory in groups or clusters arbitrarily spaced at chosen distances in accordance with these claims is not shown by the record to be anything more than an obvious variation within the ability of a person of ordinary skill in the art. Likewise we find nothing in the record to show it is unobvious to employ different rates of air velocity, including at least 70 feet per second.

No reversible error is seen in the board's refusal to allow claims 27, 28 and 29 over the Mallory publication considered with the Wolterink affidavit. In the

absence of a limitation in the spacing therebetween, nothing unobvious is seen in providing the orifices in clusters of four. Such arrangement would result, for example, from merely omitting every third pair of opposed orifices in the construction of the Mallory publication or of the Mallory construction shown in the plates accompanying the Wolterink affidavit.

So far as the recitations in claims 27, 28 and 29 of the spacing of the orifices in each cluster, as well as the corresponding recitations in nozzle or aeration unit claims 9 to 12, are concerned, the prints accompanying the Wolterink affidavit show that four adjacent Mallory type orifices fall within a rectangle of less than 2 inches by less than 6 inches. The applications discuss the nozzles as follows:

" * * * The preferred diameter of the four orifices is approximately 3″, that having been found to be eminently satisfactory. From 1″ to 6″ is believed to be acceptable, but this should not be taken as applying equal efficiency. * * * "

We do not think the board erred in finding nothing unobvious involved in merely positioning four orifices on a circle approximately three inches in diameter or three to six inches in diameter. Further in connection with claims 9 to 12, we note that appellant in his brief disclaims any contention that delivering air upwardly to the nozzle unit, as required by those claims, is significantly different from delivering it downwardly as in Mallory.

For the foregoing reasons, we find no reversible error in the board's decision in P.A. 7058 and will affirm the rejection of claims 9 to 12, 23, 24, 27, 28 and 29 in application Serial No. 511,453.

In P.A. 6772, the board sustained the examiner's rejection of all claims, 24 to 39, on the prior art. While the examiner rejected the claims as unpatentable over Powers, Greenawalt or Walker, each in view of the Zistel patent or the Mallory publication, the board considered principally the Powers patent and Mallory Report.

■ The examiner additionally rejected all the claims in P.A. 6772 as unpatentable over the claims of parent application Serial No. 511,453 of P.A. 7058. That rejection was not reversed by the board. However, both applications having claims to the same subject matter have been treated on the merits by the board and the board decisions in both cases are before us for review. Also, appellant states that only one patent will issue, relying on the assumption that the Patent Office will permit all claims found allowable to be placed in one application. Under the rather unusual circumstances here, which include consideration by the board of the identical claim in both cases, with its allowance in one and rejection on art in the other, the only reasonable course for us is to treat all the claims on the merits and decline to sustain the rejection as unpatentable over the claims in Serial No. 511,453.

■ In P.A. 6772, claims 26, 27, 36 and 37 define the aerating apparatus, and claims 28 to 34, 38 and 39 are drawn to the method. Claim 37 is identical with claim 32 in P.A. 7058, allowed by the board, and claims 26 and 39 include substantially all the limitations of claims 32 and 39, respectively in P.A. 7058, also allowed by the board. Those claims, 37, 26 and 39, as well as claims 27 to 34, 36 and 38, all recite the dimensional relationships of the orifices in the clusters and define the amount of spacing between the clusters, the combination of features which the board found in P.A. 7058 to be unobvious over the references in view of the showing of commercial success of appellant's process and the lack of success of Mallory's process. We are satisfied from such showing that those claims are unobvious over the art of record and hereby reverse their rejection.

■ The only other claims in P.A. 6772 are 24 and 25, directed to the nozzle. We think those claims fail to define anything unobvious over the combination of the Mallory Report and the Powers

patent. The recited dimensions of the nozzle are regarded as obvious over Mallory as indicated in connection with the nozzle claims in P.A. 7058. Disposing the conduits "less than about 180° apart," as recited in claim 24, or "about 90° apart," as set out in claim 25, is also considered obvious, particularly in view of the suggestion of four air conduits radiating from a single feed pipe in a right angle relationship in Powers. While the radiating arms in Powers are apparently much longer than the arms of Mallory's nozzle, Powers clearly suggests the simple expedient of radiating orifice arms, irrespective of their particular length, from a supply pipe at right angles. Although we are inclined to regard Mallory rather than Powers as the basic reference, there is no material change in the grounds of rejection since we rely on those two references for the same teachings the board found in them. In re Krammes, 314 F.2d 813, 50 CCPA 1099.

█ Appellant urges that the board relied on new grounds of rejection although the Mallory reference principally relied upon is not a new reference. He also complains of the Commissioner's denial of a petition for consideration of an amendment relating to the rejected claims in P.A. 7058, which denial was based on In re Allen, Jr., 115 F.2d 936, 939, 28 CCPA 792.

We do not think it proper for us to act here in connection with either of those matters. Appellant has a remedy in the case where he thinks the board improperly failed to designate a new rejection as such.[2] The petition which appellant filed in P.A. 7058 was filed only two days before the notice of appeal to this court and the Commissioner's ruling that he was precluded from granting the request made therein was in accord with the ruling of this court in the Allen case that "jurisdiction of the cause is transferred to this court" when a notice of appeal is duly filed. We find no circumstances in the present case which warrant our taking a different position now.

The decision of the board in P.A. 7058 is affirmed; that in P.A. 6772 is affirmed as to claims 24 and 25 and reversed as to claims 26 to 34 and 36 to 39.

Modified.

---

2. The solicitor suggests review of that matter "might be had by petition to the █ Commissioner followed by Civil Action under 5 U.S.C. 1009."